AUGUST PANELL *vs.* ANGELO ROSA & another.

Worcester.    October 2, 1917. — December 31, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, & PIERCE, JJ.

</div>

*Evidence,* Privileged communications between attorney and client, Of soundness of mind, Presumptions and burden of proof. *Attorney at Law. Will. Practice, Civil,* Exceptions. *Sanity.*

At the trial of a controversy between the proponent of a will, who was the husband of the alleged testatrix and was made the residuary legatee by the proposed will, and the heirs at law of the signer of the instrument, who was alleged by the contestants to have been of unsound mind, an attorney at law, who did not draw the alleged will but had acted as the legal adviser of the alleged testatrix, properly may be permitted to testify as a witness for the contestants, against the objection of the proponent of the will, that "two or three years ago he had a conversation with the testatrix when she came to consult him relative

to difficulties" with her husband and may tell what she said to him in that conversation.

At the trial described above the same witness, subject to the proponent's exception, was permitted to testify that he had warned the husband to keep away from his wife and had stated to him "that she dreaded him, that he had abused her and that she had become sick," and that the husband had admitted that he had abused his wife and said that "he would go and live somewhere else." *Held,* that this evidence had no bearing upon the question of the soundness of mind of the deceased wife and appeared to have been immaterial, and that its admission was harmless error under St. 1913, c. 716, § 1, and therefore afforded no ground for sustaining the exception.

In the same case there was testimony indicating strange conduct and unusual remarks on the part of the alleged testatrix, there was evidence that she had suffered a stroke of paralysis and a physician testified that all such "shocks have an effect of some kind on the mind." The single justice refused to rule that there was no evidence that would justify a finding that the alleged testatrix was of unsound mind. *Held,* that the refusal was right; that the burden was on the proponent of the will to show that the alleged testatrix was of sound mind, and that with the evidence stated above the general presumption of sanity did not as matter of law require a finding of testamentary capacity.

APPEAL from a decree of the Probate Court of the county of Worcester allowing the alleged will of Filmania Rose Panell, late of Worcester.

The appeal was heard by *Carroll,* J. The alleged will, which was dated December 4, 1916, left $100 to a godchild of the alleged testatrix and left the residue of her estate to the petitioner, August Panell, who it was agreed was the husband of the alleged testatrix until she obtained a divorce from him for cruel and abusive treatment about seven years before her death. The material evidence and the rulings of the single justice as to the admission of evidence are described in the opinion. At the close of the evidence the petitioner asked the justice "to rule that there was no evidence that would justify the court in finding that the testatrix, Filmania Rose Panell, was of unsound mind."

The justice refused to make this ruling and found that the alleged testatrix was not of sound mind. He made an order that the decree of the Probate Court allowing the will be reversed; and the petitioner alleged exceptions.

*H. Davenport,* for the petitioner.

*D. F. O'Connell, J. E. Sullivan & C. H. L. Bock,* for the respondents, submitted a brief.

RUGG, C. J. This is a petition for the allowance of an instrument purporting to be the will of Filmania Rose Panell, deceased.

One of the issues tried was whether she was of sound mind at the time of the execution of the instrument. As bearing upon that issue, a practicing attorney called by the contestants, who were the heirs at law of the deceased, was permitted against the exception of the proponent to testify that "two or three years ago he had a conversation with the testatrix when she came to consult him relative to difficulties with Mr. Panell. He said that she asked him to write Mr. Panell a letter to have him keep away from her, stating that he had struck her in the head, opened up a cut and otherwise abused her, causing her to become sick and dizzy." A different attorney drafted the instrument offered for probate.

The general rule of the common law is well settled that an attorney may not disclose matters communicated to him by his client under the confidence arising from the professional relation. The reason for the rule is familiar and need not be restated. *Foster* v. *Hall,* 12 Pick. 89, 93. *Temple* v. *Phelps,* 193 Mass. 297, 304. *Greenough* v. *Gaskell,* 1 Myl. & K. 98, 103. *Russell* v. *Jackson,* 9 Hare, 387. It frequently has been held that the rule of this privilege should be construed strictly. *Hatton* v. *Robinson,* 14 Pick. 416, 422. There are several exceptions to the rule. It was held in *Doherty* v. *O'Callaghan,* 157 Mass. 90, that the attorney who drafted a will might testify in a contest as to the allowance of the will, founded upon averments of unsoundness of mind and undue influence, in regard to what was said to him by the alleged testator when the latter consulted him for the purpose of having his will drawn. The ground of that decision was that the reason for the rule of privileged communications between attorney and client did not apply to testimony respecting such statements in a trial as to the allowance of the will.

The question of the extent of the privilege arose in *Phillips* v. *Chase,* 201 Mass. 444, in a petition for the revocation of a decree of adoption, by a woman since deceased, of a son of her husband, brought by her heirs and next of kin. Testimony was offered of an attorney to the effect that the deceased woman consulted him professionally and made oral statements and an affidavit to the effect that the adoption was not her free will and choice, but was brought about by ill treatment, duress and coercion and that she did not want it to stand. In discussing the question of this privilege it

was said by Chief Justice Knowlton, at page 449: "It is for the protection and benefit of the client, so that his disclosures may not be used against him in controversies with third persons.  He may waive it, and if there is a controversy after his death between his estate and those claiming adversely to it, the privilege may be waived by his executor or administrator, (*Brooks* v. *Holden,* 175 Mass. 137,) or by his heirs (*Fossler* v. *Schriber,* 38 Ill. 172); but where the controversy is not between an estate and persons claiming against it, but is to determine who shall take by succession the property of a deceased person, and both parties claim under him, the reason for the privilege does not exist, and neither can set up a claim of privilege against the other. *Doherty* v. *O'Callaghan,* 157 Mass. 90.  *Russell* v. *Jackson,* 9 Hare, 387.  *Blackburn* v. *Crawfords,* 3 Wall. 175, 192, 194.  *Glover* v. *Patten,* 165 U. S. 394, 406. See also, as tending to establish the same proposition, *Layman's Will,* 40 Minn. 371; *Coates* v. *Semper,* 82 Minn. 460; *Kern* v. *Kern,* 154 Ind. 29; *O'Brien* v. *Spalding,* 102 Ga. 490; *Scott* v. *Harris,* 113 Ill. 447, 454; *Thompson* v. *Ish,* 99 Mo. 160, 175." Although portions of the communications there under discussion were made with the request that they be communicated to her brothers after her death, and although this circumstance is referred to in the opinion, the ground of the decision is that above quoted.  The principle there declared is supported by numerous authorities. *Holyoke* v. *Holyoke,* 110 Maine, 469, 475, 477.  *Middletown Trust Co.* v. *Crowell,* 89 Conn. 290, 293.  *Winters* v. *Winters,* 102 Iowa, 53, 57. *In re Shapter's Estate,* 35 Col. 578, 587.  *In re Downing's Will,* 118 Wis. 581, 592.  *Norton* v. *Clark,* 253 Ill. 557, 565.  *Veazey's Case,* 10 Buch. 466, 470.  *Black* v. *Funk,* 93 Kans. 60, 63.  *Mahoney* v. *Healy,* 10 Del. Ch. 311.  See *Matter of Cunnion,* 201 N. Y. 123, 128.

That principle controls the case at bar, where the controversy was between the proponent of the will and the heirs at law of the deceased, and the issue was her soundness of mind.  There was no error in the admission of this testimony.

The same attorney was permitted to testify that he warned the husband to keep away from his wife, stated to him "that she dreaded him, that he had abused her and that she had become sick," and that the husband admitted that he had abused his wife and said that "he would go and live somewhere else."  This seems to

have been admitted on the case in chief and not in contradiction of testimony of the husband. This evidence had no bearing upon the soundness of mind of the deceased wife and appears to have been immaterial. Its admission was harmless error. St. 1913, c. 716, § 1.

There was some testimony indicating strange conduct and unusual remarks by the deceased. She had suffered a paralytic shock and a physician testified that all such "shocks have an effect of some kind on the mind." Under these circumstances the general presumption of sanity did not as matter of law require a finding of testamentary capacity. The burden of proof was upon the petitioner to show by a fair preponderance of the evidence that the deceased was of sound mind. *Clifford* v. *Taylor,* 204 Mass. 358. The testimony was oral. It could not have been ruled as matter of law that this burden had been sustained. *McDonough* v. *Metropolitan Life Ins. Co. ante,* 450, and cases there collected.

*Exceptions overruled.*